**Hatim MUHAMMAD, Petitioner**

v.

**Jake MENDEZ, et al., Respondents**

**No. CIV. 1:CV–02–0119.**

United States District Court,
M.D. Pennsylvania.

April 15, 2002.

Hatim Muhammad, White Deer, PA, pro se.

Matthew Edward Haggerty, Office of U.S. Atty., Scranton, PA, for respondents.

### *MEMORANDUM*

RAMBO, District Judge.

This case is a habeas corpus petition brought by Hatim Muhammad against Warden Jake Mendez of the United States

Penitentiary at Allenwood in White Deer, Pennsylvania and the United States Parole Commission ("Commission") filed pursuant to 28 U.S.C. § 2241.[1] Petitioner raises various procedural due process violations regarding his initial parole hearing on April 26, 2000 and challenges the Commission's decision to depart from the guideline ranges for setting a reconsideration hearing. The matter is fully briefed and ripe for consideration. Because Petitioner relies upon inapplicable federal parole statutes and the Commission did not abuse its discretion in departing from the guideline ranges, Muhammad's petition will be denied.

## I. Background

Petitioner was sentenced by the Superior Court for the District of Columbia in 1975 to 15 to 45 years for rape while armed. (Doc. 7, Response to Habeas Petition.) Muhammad was paroled by the D.C. Board of Parole on July 11, 1989. (R. 1, Certificate of Parole.)[2] Muhammad was sentenced on September 30, 1991 to 7 to 21 years consecutive for burglary and armed robbery, and is serving an aggregate 14 to 73 year sentence for these offenses and the parole violation. (R. 2, DOC Face Sheet.) The D.C. Board revoked his parole January 9, 1992. (R. 3, Notice of Board Order.) The parole eligibility date for the aggregate sentence was August 18, 2000. (R. 2.)

Muhammad was subsequently transferred to the jurisdiction of the United States Parole Commission ("Commission") pursuant to the National Capital Revitalization and Self–Government Improvement Act of 1997, Public Law No. 105–33, § 11231(a)(1), 111 Stat. 712, 745 (effective August 5, 1998); D.C.Code § 24–1231. This statute abolished the D.C. Board of Parole and transferred jurisdiction to make parole decisions for all D.C.Code offenders to the Commission.

The Commission provided Muhammad with an initial parole hearing on April 26, 2000. (R. 4–6, Initial Hearing Summary.) The Commission applied the amended and supplemented D.C. parole regulations, which are codified at 28 C.F.R. § 2.70 *et seq.*[3] Petitioner received a salient factor score of 6, and a total point score of 3, which indicates that parole should be denied at the initial hearing. 28 C.F.R. § 2.80(h). The hearing examiner recommended denial of parole and continue for a rehearing after the service of 60 months from his parole eligibility conviction. The stated reason for the departure from rehearing range was because Muhammad was deemed to be a more serious risk than indicated by his base point score.

Upon administrative review of the initial hearing summary, the Commission determined that in order to assess Muhammad's suitability for parole release, the Commission needed to obtain a copy of the official version, i.e. police report, of Petitioner's arrest on March 16, 1991 for the offenses of Assault on a Police Officer with a Dangerous Weapon and Possession with Intent to Distribute Cocaine and a copy of the disposition of the charges. (R. 7, Notice of Action.) In order to obtain the additional information, the Commission deferred the

---

1. Along with his petition, Muhammad submitted the requisite five dollar filing fee for this action.

2. "R. ___" refers to Respondents' Record In Support of Response to Habeas Corpus Petition. (Doc. 8.)

3. Because Petitioner's initial hearing commenced prior to the most recent rule change effective January 4, 2001, procedures in effect as of August 5, 1998 were applied in Muhammad's case for determining his parole eligibility.

decision up to 90 days pending receipt of additional information. (*Id.*)

By notice of action dated November 30, 2000, the Commission ordered "remand for a hearing on the next available docket." (R. 8, Notice of Action.) The reason for this decision was "to consider information in the Washington, D.C. police department report dated March 16, 1991" to determine whether or not Petitioner was a more serious risk for release to the community. (*Id.*)

A reconsideration hearing was held on March 6, 2001. (R. 11–13, Reconsideration Hearing Summary.) Petitioner was questioned about the March 16, 1991 report and stated he had read the report and his comments indicate that he had indeed read the report. Again, the hearing examiner recommended that parole be denied, and that a rehearing occur in 60 months. The departure from the rehearing schedule of 12–18 months was warranted because Muhammad posed a more serious risk than indicated by his salient factor score. (*Id.*)

Petitioner alleges the Commission "violated its own regulation and statute by failing to provide petitioner copies of any adverse documents which it was to consider to make a parole determination prior to petitioner's initial hearing." (Doc. 1, p. 4.) Muhammad also asserts that the Commission violated his "statutory and regulatory rights to have his parole initial hearing tape recorded." (*Id.*, p. 5.) Petitioner next contends that the Commission "impermissibly double counted petitioner's risk assessments, nature of charges, circumstances of the offenses, and seriousness, twice, when the sentencing court previously considered these factors at the time of petitioner's sentence." (*Id.*, p. 7.) Lastly, Petitioner contends the Commission miscalculated his salient factor score and re-

fused to rehear his case for adjustments. (*Id.*, p. 9.)

Respondents contend that Petitioner incorrectly relies upon the parole statutes for federal inmates. Respondents assert that since Muhammad is a D.C.Code offender, the applicable law to his parole release is the D.C. parole statute, D.C.Code § 24–204; § 24–1231(c). Accordingly, Respondents argue that Petitioner, as a D.C. offender, has no right to procedures which are provided for solely in the federal parole statute, i.e. Petitioner's tape recording claim and copies of documents claim. Respondents also contend that it is settled law of the District of Columbia that the merits of a decision to grant or deny parole, or of the length of the "set-off" to the next parole hearing, are not judicially reviewable. *E.g., Jones v. Braxton,* 647 A.2d 1116 (D.C.App.1994)(merits of decision to deny parole not judicially reviewable; claim that score miscalculated, or inaccurate information considered, goes to merits and is not reviewable); *Brown–Bey v. Hyman,* 649 A.2d 8 (D.C.App. 1994)(length of "set-off" to rehearing not judicially reviewable). Respondents further assert that the Commission correctly computed Muhammad's salient factor score. (Doc. 7, p. 6–9.)

## II. Discussion

■ It is well settled that the determination of eligibility for parole has been committed by Congress to the discretion of the Commission. *United States v. Addonizio,* 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979); *Campbell v. United States Parole Commission,* 704 F.2d 106 (3d Cir.1983). The Commission assumed the responsibility of making parole release decisions for all eligible District of Columbia Code felony offenders on August 5, 1998 pursuant to the Revitalization Act

and D.C.Code 24–209.[4] *See* 28 C.F.R. § 2.70. Therefore, the Commission has authority over Muhammad who is a D.C. offender. The guidelines for D.C. offenders are regulated by 28 C.F.R. § 2.80.

■■■ Because the Constitution itself does not create any liberty interest in parole, such an interest to prove a due process violation must emanate from state law, or in this case, District of Columbia law. *See Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). Courts have consistently held that the D.C. parole statute, which applies to D.C.Code offenders even after they are transferred to the jurisdiction of the Commission, does not create any liberty interest in parole. *See, e.g., McRae v. Hyman,* 667 A.2d 1356 (D.C. 1995) (The District's parole scheme confers discretion to grant or deny parole and the scoring system creates no liberty interest overriding the exercise of that discretion); *Ellis v. District of Columbia,* 84 F.3d 1413 (D.C.Cir.1996) (D.C. parole statute and regulations do not create any liberty interest in parole.)

The Revitalization Act requires the Commission to follow the existing parole laws and rules of the District of Columbia, but also gives the Commission the same authority previously enjoyed by the D.C. Board of Parole to "amend and supplement" the D.C. parole rules, which it has done. *See* D.C.Code § 24–1231(a). The Commission's amended version of the parole rules and guidelines of the D.C. Board of Parole was published at 63 Federal Register 39172 (July 21, 1998) and is codified at 28 C.F.R. § 2.80 *et seq.* The court will now address Petitioner's various procedural due process allegations.

### A. Prehearing Disclosure

Petitioner contends that 18 U.S.C. § 4208(b) mandates the Commission provide the Petitioner with any reports relied upon in reaching its decision. (Doc. 1, p. 4.) Respondents assert that since Muhammad is a D.C.Code offender, the law applicable to his parole release is the D.C. parole statute, D.C.Code § 24–204; § 24–1231(c). Therefore, Respondents argue that Muhammad's claim that the Commission failed to comply with the federal parole statute in his case must be rejected.

■■ As previously stated, the applicable statutes for D.C. offenders is the D.C.Code and not the federal parole statutes. The D.C. parole statute does not mandate provision of copies of records which will be considered by the Board, nor for disclosure of any kind, in connection with parole decisionmaking. *See* D.C.Code §§ 24–201.1 through 209. The cases relied upon by Petitioner pertained to federal prisoners and not D.C. offenders and, thus, are inapposite.

Furthermore, the parole regulations applicable to Petitioner do not provide for prehearing disclosures.[5] The applicable regulations regarding hearing procedures merely provide that the examiner shall review with the prisoner the guidelines at

---

4. Effective August 5, 2000, the Commission was given the remaining responsibilities of the former D.C. Board of Parole regarding the supervision of parolees and the revocation of parole for release violations. § 11231(a)(2) of the Act, codified at D.C. ode § 24–1231(a)(2).

5. The Commission's regulations for D.C. offenders were amended effective January 2, 2001. Section 2.72(d) now provides for prehearing disclosure of file materials pursuant to § 2.55 for D.C. offenders confined in federal facilities. The amendments do not pertain to Petitioner since his initial hearing was conducted before December 4, 2000 and he received negative points for superior program achievement. *See* 28 C.F.R. § 2.80(a).

§ 2.80 and discuss with the prisoner such information as the examiner deems relevant, including the prisoner's offense behavior, criminal history, institutional record, health status, release plans, and community support. Based on the Re-hearing Hearing Summary, Petitioner was questioned about the police report and given an opportunity to provide a statement to be taken into consideration by the Commission. (R. 11–12.) Per the report, Muhammad "stated that he has read the police report ...." (R. 11.) Petitioner addressed the report on its merits and had an opportunity to provide mitigating evidence. Petitioner only alleges that the Commission did not comply with the mandatory language in § 4208(b). Since § 4208 is inapplicable and the Commission complied with the appropriate statutes and regulations, this claim is without merit and will be dismissed.

### B. Tape Recording of Hearing

■ Next, Petitioner claims the Commission violated his statutory and regulatory rights to have his parole initial hearing tape recorded. Again, Muhammad relies upon a federal parole statute, 18 U.S.C. § 4208(f). For the reasons noted above, the federal parole statute is not applicable. However, the Commission's regulations as to D.C.Code offenders provides that a "full and complete recording" of every hearing shall be retained by the Commission. 28 C.F.R. § 2.72(g). Furthermore, upon a request, the Commission shall make available to any eligible prisoner such record as the Commission has retained of the hearing. *Id.*

Petitioner states in response to his request for a copy of the taped proceedings, upon receipt of the requested documents, he "noticed that the tape recording cassette had been totally deleted." (Doc. 1, p.

6.) Respondents assert that the Commission complied with the regulations in regards to the recording and responding to the request. Respondents contend that if the recording was unsuccessful for some technical reason and the Commission, unbeknownst to it, did not actually record the hearing when it attempted to do so, it has fully complied with the regulation, i.e. if the recording was defective and it provides a copy of the defective tape, it has complied with the regulation. In his traverse, Petitioner attached a letter from a disclosure specialist with the Commission in response to his letter regarding the blank tape. (Doc. 9, Pet.'s ex. B.) The letter states a tape is not immediately available due to the storage of the tapes at the Washington Records Center but he would be provided with a copy of the tape as soon as it was available.

Based on the record before the court, the Commission has complied with its regulations. If the tape is defective, the Commission has complied with the regulations because Petitioner has been furnished with a copy of the recording it currently possesses. If a non-defective recording is stored at the Washington Records Center, Petitioner's own exhibit reveals that a recording will be provided once it is available and, at best, Petitioner's claim is premature. The claim will be dismissed.

### C. Double-counting

Petitioner alleges the Commission "impermissibly double counted the seriousness of the offense-nature and circumstances of the charges, history anc [sic] charateristics [sic] etc-when determining the petitioner Salient Factor Score and Risk Assessment Category Score to justify a set-off outside of the Guidelines-an area which had already been considered by the trial court at the time of petitioner's sentence in the instant offense." (Doc. 1, p. 7.) Respon-

dents assert that under Muhammad's version of a double-counting scenario, the Commission would be barred from considering any information which was considered by the sentencing court, "creating a bizarre situation in which the Commission could not consider the circumstances of the confining offense in determining whether or not a prisoner was safe to release into the community." (Doc. 7, p. 8–9.) Respondents argue that Muhammad's double-counting claim is without merit.

■■ Double-counting occurs when the Commission considers as a basis for departing from the guidelines the same factors it used either to place the inmate in a particular severity category or to calculate his Salient Factor Score, or both.[6] *Malik v. Brennan*, 743 F.Supp. 639, 644 (W.D.Wis.1990). The Third Circuit Court of Appeals concluded that "(s)ince the purpose of the guidelines is to set forth the factors that the Commission should consider in setting a presumptive release date, it would be irrational and arbitrary to use those same factors to take a prisoner outside the guidelines." *Harris v. Martin*, 792 F.2d 52, 54 (3d Cir.1986); *See Romano v. Baer*, 805 F.2d 268, 271 (7th Cir.1986) (Held that double-counting constitutes an abuse of discretion.) *See also Castaldo v. United States Parole Commission*, 725 F.2d 94,96(10th Cir.1984)(The Commission's decision to exceed the guidelines requires something more than the standard reasons for within-guideline denial; in other words, "good cause" for "continued incarceration must be established."). *Briggs v. United States Parole Commission*, 736 F.2d 446, (8th Cir.1984) ("We note further that the factors which the Commission recited in determining Briggs' offense severity and Salient Factor Score may not also be utilized as justification for deviating from the guidelines..... The reasons for deviating from the guidelines must be beyond and apart from the factors the Commission uses in applying them.").

The Commission may, in "unusual circumstances" schedule a reconsideration hearing at a time different from that indicated by the guidelines. 28 C.F.R. § 2.80(m)(1). "Unusual circumstances" are case-specific factors that are not fully taken into account in the guidelines. *Id.* The Commission shall specify in the notice of action the specific factors that it relied on in departing from the applicable guideline range. *Id.* The guidelines list numerous factors that may warrant a decision above the guidelines. *See* 28 C.F.R. § 2.80(m)(2).

In his July 6, 2001 Notice of Action, Petitioner was notified that a decision above the guidelines was warranted because Muhammad was a more serious risk than indicated by his salient factor score in that he has "repeatedly committed violent crimes, and ... a demonstrated propensity for unusually cruel behavior." (Doc. 1, Pet's ex.) The report states:

> The current offense involved residential burglary and armed robbery with the female occupants escaping to avoid harm while you were still in the residence. This most recent offense has similarities to the instant offense for which you were on parole. In that case, you broke into a residence and confronted the female victim, tying her up and cruelly raping her in the presence of her 3 year old daughter. Further, prior to committing

---

**6.** It appears Petitioner misinterprets "double-counting." Double-counting does not occur when the Commission considers the nature and circumstances of Petitioner's prior and confining offenses which were also considered by the sentencing judge. The Commission is allowed to consider those factors in determining whether or not a prisoner is safe to release into the community.

the last residential burglary you assaulted police officers with a knife when they arrested you on 3–16–1991 for your involvement in a drug offense. Your propensity to commit continued acts of violence while on parole indicates that you are a continuing danger to the community and cannot safely be released on parole.

(*Id.*) An extensive record of violence beyond that taken into account in the guidelines and unusual cruelty are two factors provided by the guidelines to warrant a departure from the guideline range. *See* 28 C.F.R. § 2.80(n)(2)(ii)(A) and (C).

■■ The function of judicial review of a Commission decision on a petition for writ of habeas corpus is to determine whether the Commission abused its discretion. The Court is not empowered to substitute its judgment for that of the Commission in evaluating a habeas petitioner's claims unless the Commission's exercise of discretion represents an egregious departure from rational decision-making. *See Butler v. United States Parole Commission,* 570 F.Supp. 67–77 (M.D.Pa.1983). The Court of Appeals for the Third Circuit has routinely recognized that a federal court's review of a decision issued by the Commission is limited. *Furnari v. Warden,* 218 F.3d 250, 254 (3d Cir.2000). The standard applied in such a review " 'is not whether the [Commission's decision] is supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the [Commission's] conclusions· embodied in its statement of reasons.' " *Id.* (*quoting Zannino v. Arnold,*

531 F.2d 687, 691 (3d Cir.1976)). However, the review should consider whether the Commission " 'has followed criteria appropriate, rational and consistent' with its enabling statutes so that its 'decision is not arbitrary and capricious, nor based on impermissible considerations.' " *Id.* (*quoting Zannino,* 531 F.2d at 690).

■■■■ It is equally well-settled that the Commission can use the *nature* of a prisoner's convictions as a basis for exceeding the guidelines, even though those same convictions were also used in his sentence computation pursuant to the guidelines. *Sutherland v. Keohane,* Civ. No. 90–92, slip op., (M.D. Pa. June 6, 1990) (Caldwell, J.); *Ronning v. United States,* 547 F.Supp. 301, 306 (M.D.Pa.1982). Pursuant to the standards set forth in *Marshall,* the court finds that the Commission articulated a rational basis for its determination to depart from the guideline ranges and did not abuse its discretion. Accordingly, Petitioner's double-counting claim will be denied.

### D. Calculation of Salient Factor Score

Petitioner also contends that the Commission abused its discretion by improperly calculating his Salient Factor Score (SFS).[7] Petitioner states that the Commission determined he had two prior convictions which resulted in a score of two points in the SFS category. Petitioner states that he actually has three convictions so he should have received one point. Muhammad further adds that his· SFS should have been five instead of six.

---

**7.** Computation of the Salient Factor Score is based on a consideration of the following: (1) the number of prior convictions/adjudications; (2) the number of prior commitments in excess of 30 days; (3) the inmate's age at the commencement of the current offense/prior commitments in excess of 30 days; (4) the

length of the recent commitment free period; (5) whether the inmate was on probation or parole or in confinement or escape status at the time of the instant offense; and (6) whether the inmate was older or younger than 41 years of age at the commencement of the current offense. 28 C.F.R. § 2.20.

Respondents state that this claim is without merit because the Commission properly calculated Muhammad's SFS. Respondents are correct in their analysis. Item A of the SFS pertains to the number of prior convictions. Petitioner received two points for one prior conviction. Petitioner has erroneously read his Notice of Action. According to the presentence report, the only prior countable conviction as an adult is the rape while armed conviction in 1975.[8] Therefore, Petitioner's SFS was properly calculated. Accordingly, this claim lacks merit and will be dismissed.[9]

### E. Guideline Departure

Petitioner contends that the Commission abused its discretion by using two prior convictions and the dismissed assault charge to impose a high severity rating category to Petitioner's case justifying a departure from the guidelines. This argument is the same as the double-counting argument addressed above. Because the court has found the Commission's departure from the guideline ranges was not an abuse of its discretion, this claim will be denied for the same grounds.

### F. Cross-referencing of regulations

■ Lastly, Petitioner claims that the Commission abused its discretion in cross-referencing the D.C. parole regulations as supplemented and amended to the federal parole regulations. Petitioner argues that the Commission implicitly repealed the

D.C. regulations by referencing the federal regulations, and that such repeals by implication are "not favored in the law." (Doc. 1, p. 13.)

However, as previously noted, the Commission has the explicit authority to "amend or supplement any regulation interpreting or implementing the parole laws of the District of Columbia with respect to felons." D.C.Code § 24–1231(a)(1). The Commission did not promulgate a statute, which it has no authority to do, but merely amended the D.C. parole regulations as it had the explicit statutory authority to do. The Revitalization Act requires the Commission to follow the existing parole laws and rules of the District of Columbia, but also gives the Commission the same authority previously enjoyed by the D.C. Board of Parole to "amend and supplement" the D.C. parole rules, which it has done. See D.C.Code § 24–1231(a). Accordingly, the Commission did not abuse its discretion in amending the D.C. parole regulations and the remaining claim is denied.

### III. Conclusion

Because the Commission did not abuse its discretion in departing from the guideline ranges in setting Petitioner's reconsideration hearing and because Petitioner relies upon inapplicable federal parole statutes, the instant habeas petition will be denied. An appropriate order will be issued.

---

**8.** Petitioner had a conviction for disorderly conduct in 1974. This conviction is not countable in the SFS. See 28 C.F.R. § 2.20, salient factor scoring manual, paragraph A.2(b)(2)(conviction for disorderly conduct not counted unless commitment of more than 30 days, or classified by the jurisdiction as a felony). Muhammad's 1991 convictions are not "prior" convictions since they are the convictions for which Petitioner is currently in custody.

**9.** As noted by Respondents, it appears that Muhammad does not understand the effect of his argument. A higher SFS is an indication of a better, not a worse, parole risk, so Petitioner is arguing against his own interest when he claims his SFS is too high. A score of six (6) indicates that Petitioner is a "good risk" for parole. A score of five (5), which is the score advocated by Muhammad, indicates that Petitioner is a "fair risk" for parole.

## ORDER

For the reasons set forth in the foregoing memorandum, **IT IS HEREBY ORDERED THAT:**

1. The petition for writ of habeas corpus is denied.

2. The Clerk of Court shall close the file.