**Joseph C. BOONE, Petitioner,**

v.

**Frederick MENIFEE, [and] United States Parole Commission, Respondents.**

**No. 03 Civ. 2593(RMB)(FM).**

United States District Court, S.D. New York.

June 24, 2005.

Joseph C. Boone, Otisville, NY, pro se.

Joseph Anthony Pantoja, U.S. Attorney's Office, SDNY, New York, NY, for Respondents.

## REPORT AND RECOMMENDATION TO THE HONORABLE *RICHARD M. BERMAN*

MAAS, United States Magistrate Judge.

### I. *Introduction*

*Pro se* petitioner Joseph Boone ("Boone") brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2241 to challenge a decision by the United States Parole Commission ("Commission") to revoke his parole. In 1976, Boone was convicted of offenses under both the United States Code ("U.S.Code") and the District of Columbia Code ("D.C.Code"), receiving sentences that the Bureau of Prisons later aggregated with his sentence on a 1982 D.C.Code violation. Boone was paroled on November 20, 1991,[1] but was convicted in 1994 of U.S.Code drug and weapons offenses, which resulted in a jail term of 240 months (later reduced to 135 months) ("Second Sentence"). Upon learning of this conviction in 1995, the Commission issued a parole violation warrant, which it lodged as a detainer at the federal facility where Boone was incarcerated. After the warrant was executed, the Commission eventually revoked Boone's parole following his completion of the Second Sentence.

Boone alleges that he had completed the federal portion of his aggregate sentence by the time he was paroled in 1991. (Pet. at 6). He contends that the Commission's revocation of his parole therefore should have been governed by the standards and procedures of the District of Columbia

---

1. Parole has not been available to federal prisoners since November 1, 1987. The elimination of parole, however, applied to prisoners only prospectively. *See Romano v. Luther*, 816 F.2d 832, 837 (2d Cir.1987); *LoFranco v.* *U.S. Parole Comm'n*, 986 F.Supp. 796, 803 n. 6 (S.D.N.Y.1997), *aff'd*, 175 F.3d 1008, 1999 WL 65136 (2d Cir.1999). Boone therefore was eligible for parole.

Board of Parole ("D.C.Board"), rather than the harsher federal standards applicable to violators of the U.S.Code. (*Id.* at 6–7). Boone believes that if this had occurred, he would have received a parole revocation hearing during the time he was serving his Second Sentence, thereby enabling him to have served any additional time imposed in connection with the parole violation concurrently. He further alleges that this, in turn, would have made him eligible for certain programs (such as early release) that were not available to him. (*Id.* at 11). Boone contends that the Commission abused its discretion, and violated his rights to due process and equal protection under the Fifth and Fourteenth Amendments, by lodging its warrant as a detainer, but awaiting his completion of the Second Sentence before having the warrant executed and holding a parole revocation hearing.

For the reasons that follow, the petition should be denied.

## II. *Factual Background*

### A. *Convictions Giving Rise to the Aggregate Sentence*

On August 13, 1976, the United States District Court for the District of Columbia sentenced Boone to two consecutive ten-year terms of imprisonment following his conviction on firearms charges under the U.S.Code. (*See* Pet. at 1; Decl. of AUSA Joseph A. Pantoja, dated August 11, 2003 ("Pantoja Decl."), Exs. 1 at 5 & 17 at 1; Letter from Mr. Pantoja to the Court, dated January 18, 2005 ("Pantoja Ltr."), Ex. D at 1). Those sentences subsequently were modified to run concurrently. (Pet. at 1; Pantoja Decl. Ex. 17 at 1).

On December 8, 1976, the Superior Court for the District of Columbia sentenced Boone to a maximum term of twenty-five years in jail following his conviction on D.C.Code charges of assault with intent to commit a robbery while armed, carrying a pistol without a license, and assault with intent to kidnap while armed. (Pet. at 1; Pantoja Decl. Ex. 1 at 5–6; Ex. 17 at 1). Thereafter, on October 25, 1982, that court sentenced Boone to six months' imprisonment on another D.C.Code assault charge, to be served consecutively to the sentence imposed on December 8, 1976. (Pantoja Decl. Ex. 1 at 6–7).

Because Boone was assigned to serve his three sentences in a federal prison, the Federal Bureau of Prisons subsequently aggregated them into a single prison term of slightly less than twenty-six years ("First Sentence"). (Pet. at 2; Pantoja Decl. Ex. 1 at 7).

On November 20, 1991, Boone was paroled from the Federal Correctional Institution in Lompoc, California, with more than ten years remaining on his aggregate sentence. (Pantoja Decl. Ex. 2).

### B. *1994 Federal Conviction*

While he was out on parole, Boone was rearrested on November 2, 1993, and later was named in a seven-count indictment charging him with various drug and weapons offenses under the U.S.Code. (Pantoja Decl. Ex. 3 at 1a, 3). On June 1, 1994, Boone was convicted of five such felonies. (*Id.* at 3). On August 22, 1994, he was sentenced to a total of 240 months in prison on those charges, to be followed by an eight-year supervised release term. (*Id.* at 1). Subsequently, in November 2000, this Second Sentence was reduced to 135 months' imprisonment. (Pet. at 4; Pantoja Ltr. Ex. 1 at 1–2).

### C. *Parole Violation Warrant and Revocation of Parole*

The Commission apparently first learned of Boone's 1994 conviction in July

1995.[2] By then, Boone was at FCI–Cumberland serving his Second Sentence. The Commission therefore forwarded its parole violation warrant to that facility on November 1, 1995. (*See* Pantoja Decl. Ex. 6). Along with the warrant, the Commission enclosed applications for a "Dispositional Review on the Record" and for the appointment of counsel for Boone. (*Id.*). In an accompanying memorandum to Boone, the Commission noted that its warrant was lodged as a detainer. (*Id.* at 3). Because Boone was no longer housed at FCI–Cumberland by the time that the materials arrived, on June 4, 1996, the Commission sent a similar package to the United States Penitentiary in Allenwood, Pennsylvania, where Boone then was confined. (*Id.* Ex. 7).

Boone completed his application requesting counsel and a statement to the Commission in November 1997. (*Id.* Ex. 9). Thereafter, on July 21, 1998, the United States District Court for the Middle District of Pennsylvania appointed the Federal Public Defender in Harrisburg to represent Boone. (*Id.* Ex. 11). On August 31, 1998, an attorney from that office submitted a letter to the Commission, which requested that the warrant lodged as a detainer be withdrawn so that Boone could participate in certain Bureau of Prisons programs at Allenwood. (*Id.* Ex. 13). Counsel further requested that the Commission reinstate Boone's supervised release when his Second Sentence expired. (*Id.*). On September 18, 1998, the Commission rejected both requests, indicating that it had decided to maintain the warrant as a detainer. (*Id.* Ex. 14).

By December 2002, Boone had been transferred to the Federal Correctional Institution at Otisville, New York. At that time, Boone sent the Commission a letter in which he alleged that it lacked jurisdiction to issue the parole violation warrant because the federal portion of his aggregate sentence had expired before the date in 1991 that he was paroled. (*Id.* Ex. 15). By letter dated March 7, 2003, the Commission responded, contending that it had the authority in 1995 to issue warrants to "D.C.Code Offenders" who were under federal supervision. (*See id.* Ex. 16).

Following the receipt of this letter, Boone decided to seek habeas relief. His petition is dated March 23, and was received by the Pro Se Office of this Court on March 26, 2003. (*See* Docket No. 2 at 1). As of then, the Commission had neither caused the parole violation warrant to be executed, nor determined that it would, in fact, seek to revoke Boone's parole. (*See* Pantoja Ltr. Exs. B, C). Thereafter, however, on November 26, 2003, the warrant was executed following Boone's completion of his Second Sentence. (*See id.* Ex. A). Additionally, on December 9, 2003, the Commission found probable cause to proceed with the revocation hearing on the basis of Boone's 1994 conviction.[3] (*Id.* Ex. B). The Commission advised Boone of this determination a few days later. (*Id.* Ex. C).

Following a revocation hearing on January 21, 2004, the Commission revoked Boone's parole on February 10, 2004. (*Id.*). In its decision, the Commission also ordered that Boone be reparoled on May

---

**2.** The Respondent alleges that the Commission only learned of Boone's 1994 conviction on July 26, 1995, when it received a letter dated July 23, 1995, from the District of Columbia Probation Office. (Resp't's Mem. at 3 (citing Pantoja Decl. Ex. 4)). The text of the letter suggests that the Commission actually may have been advised of the conviction by telephone earlier that month.

**3.** The Probable Cause Worksheet mistakenly indicates that Boone was convicted on June 1, 1995. (*See* Pantoja Ltr. Ex. B at 1).

3, 2004, because he already had been incarcerated for 126 months since the violation occurred. (*Id.*).

### D. Second Parole Violation

■ A few months after Boone's release in May 2004, his parole officer informed the Commission that Boone had violated the terms of his parole by submitting a falsified drug referral form to the officer, using illegal drugs, and failing to submit to required drug testing. (*Id.* Ex. J). As a consequence, Boone was arrested on a new parole violation warrant on October 8, 2004. (*Id.* Ex. L). The Commission then found probable cause to proceed on October 15, 2004. (*Id.* Ex. M). In connection with that determination, the Commission proposed that Boone accept the revocation of his parole in exchange for a reparole date at the lower end of the Guidelines range. (*Id.* Ex. N). While not indicated in the record, Boone apparently rejected this offer, as his final revocation hearing was held on January 19, 2005. (*Id.* Ex. P). At that time, Boone's supervised release evidently again was revoked since the Bureau of Prisons' website[4] indicates that he currently is incarcerated at the FCI–Fairton, with a projected release date of October 7, 2005.[5]

### III. Discussion

### A. Jurisdiction

Boone has brought his petition pursuant to 28 U.S.C. § 2241, which is the proper vehicle to challenge the execution of a prisoner's sentence. *Chambers v. United States*, 106 F.3d 472, 474 (2d Cir.1997). Included among the topics that a Section 2241 petitioner may address in such a proceeding are "the administration of parole" and the "computation of a prisoner's sentence by prison officials." *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir.2001). Boone's petition squarely questions the Commission's decision-making regarding his parole status and therefore is properly brought under Section 2241.

Section 2241 provides that federal courts may grant a writ of habeas corpus only "within their respective jurisdictions." 28

---

**4.** Information concerning the whereabouts of federal inmates is available on the website of the Bureau of Prisons, at *http://www.bop.gov/iloc2/LocateInmate.jsp*. I recognize that both commentators and courts have expressed concern about judges "surfing" the web in search of factual information. *See, e.g., Upfold v. O'Hara*, No. 04 Civ. 6234, 2004 WL 1529233, at *2 n. 1 ("[M]uch information on the Internet does not meet the requirements of [Rule] 201(b)"); *Fenner v. Suthers*, 194 F.Supp.2d 1146, 1148–49 (D.Colo.2002) (questioning the accuracy of web sites because "information can be modified at will by the web master and, perhaps, others"); David H. Tennant and Laurie M. Seal, Judicial ethics and the Internet: May judges search the Internet in evaluating and deciding a case? (available at http://www.nysba.org/Content/ContentGroups/State—Bar—News1/ 2005—issues/May—June—2005/Judicial—ethics—and—the—Internet—May—judges—search—the—Internet—in—evaluating—and—deciding—a—case—.htm). Nevertheless, the Court is entitled to take judicial notice of information which is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201. In my experience, "prisoner locator" websites, such as those maintained by the Bureau of Prisons and the New York State Department of Correctional Services, meet this threshold. *See Upfold*, 2004 WL 1529233, at *2 n. 1 ("[S]entence information on the [Department of Correctional Services'] web site is unquestionably accurate and readily available"). In the unlikely event that Boone or the Respondent disagree, they can, of course, ask the Court to reconsider the propriety of taking judicial notice.

**5.** Boone's continued confinement also is established by his wife's recent letter to the Court complaining that he has been "unduly reincarcerated." (*See* letter from Barbara Boone to the Court, dated Mar. 3, 2005).

U.S.C. § 2241(a). However, if a petition has been filed in the wrong court, the statute authorizes "[t]he Supreme Court, any justice thereof, and any circuit judge [to] ... transfer the application for hearing and determination to the district court having jurisdiction to entertain it." *Id.* § 2241(b).

When a prisoner challenges his continued physical confinement, the "plain language" of the statute indicates that "jurisdiction lies in only one district: the district of confinement." *Rumsfeld v. Padilla,* 542 U.S. 426, 124 S.Ct. 2711, 2722, 159 L.Ed.2d 513 (2004). Accordingly, to challenge his incarceration, Boone must "name his warden as respondent and file the petition in the district of confinement." *Id.* at 2724; *see also Rickenbacker v. United States,* 365 F.Supp.2d 347, 353 (E.D.N.Y.2005) (judge in Eastern District of New York lacked jurisdiction under Section 2241 to issue a writ to Connecticut custodians of prisoners).

When he filed his habeas petition in 2003, Boone was confined at FCI–Otisville, which is within the Southern District of New York. (*See* Resp't's Mem. at 5). Accordingly, his petition was properly filed in this District. Thereafter, however, on May 3, 2004, Boone was re-paroled. He subsequently was rearrested in the District of Columbia for violating his parole, (Pantoja Ltr. Exs. L, M), and is now incarcerated at FCI–Fairton, which is located in the District of New Jersey. *See* Alan Ellis, *Federal Prison Guidebook* 169 (2000 ed.).

It is settled law that the Bureau of Prisons cannot deprive a federal court of jurisdiction to hear a habeas petition by transferring an inmate to another facility after his petition is filed. *See Rumsfeld,* 124 S.Ct. at 2721 ("[W]hen the Government moves a habeas petitioner after [he] properly files a petition naming [his] immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release.").[6] Nonetheless, in this case, the confinement that Boone challenges arguably resulted from his failure to comply with the conditions of his parole in 2004, rather than any misconduct on the part of the Commission in 1995. If so, this Court may lack jurisdiction to consider Boone's petition. There is no need to resolve this issue, however, because Boone's petition would fail on the merits even if jurisdiction were shown to exist.

### B. *Standard of Review*

The gravamen of Boone's petition is that the Commission abused its discretion by applying federal parole standards, rather than the standards of the D.C. Board, in deciding Boone's fate. For prisoners serving U.S.Code sentences, Congress has delegated to the Commission "the sole power to grant or deny parole ... and instructed [it] to promulgate rules and regulations establishing guidelines for [the] exercise of these powers." (*See* Resp't's Mem. of L. at 6) (quoting *Timpani v. Sizer,* 732 F.2d 1043, 1047 (2d Cir.1984) (citations omitted)). The Commission also has been

---

**6.** Additionally, Rule 23(a) of the Federal Rules of Appellate Procedure requires that "[p]ending review of a decision in a habeas corpus proceeding commenced before a court ... of the United States for the release of a prisoner, the person having custody of the prisoner must not transfer custody to another unless a transfer is directed in accordance with this rule." Fed. R.App. P. 23(a). There is no indication that such an application was made prior to Boone's transfer out of the Southern District. Thus, this Court arguably retains subject matter jurisdiction on this basis alone. *See Barden v. Keohane,* 921 F.2d 476, 477 n. 1 (3d Cir.1990).

granted the authority to depart from its guidelines for good cause shown. 18 U.S.C. § 4206(c). In these circumstances, courts have held that the proper standard for review for the Commission's decisions regarding U.S.Code violators is whether there has been an abuse of discretion. *Iuteri v. Nardoza,* 732 F.2d 32, 37 (2d Cir.1984) (quoting *Bialkin v. Baer,* 719 F.2d 590, 593 (2d Cir.1983)).

Here, of course, Boone contends that the federal portion of his sentence expired prior to 1991, and that his suitability for release on parole should therefore have been determined using the standards of the D.C. Board. (Pet. at 6–7). Prior to 1998, the Commission had the same power and authority over prisoners convicted of D.C.Code violations in federal custody as the D.C. Board had over prisoners confined in District of Columbia facilities. *See* D.C.Code Ann. § 24–409 (previously codified as § 24–209). Thereafter, however, pursuant to the National Capital Revitalization and Self–Government Improvement Act of 1997 ("NCRSIA"), Pub. Law. 105–33, 111 Stat. 712, 745, the D.C. Board was abolished, and the Commission assumed "sole authority over *all* parole release decisions regarding District of Columbia Code felony offenders convicted in Superior Court." *Simmons v. Shearin,* 295 F.Supp.2d 599, 602 (D.Md.2003) (emphasis added). The Commission subsequently promulgated a rule requiring it to adhere to the guidelines of the former D.C. Board in effect on August 4, 1998 for D.C.Code violators whose initial hearings were held before August 5, 1998. 28 C.F.R. § 2.80(a)(4). Nevertheless, the Commission has the authority to depart from those guidelines. *See* NCRSIA § 11231; *McKinnon v. Conner,* 120 Fed.Appx. 280, 283 (10th Cir.2005); [7] *McKissick v. United*

*States Parole Comm'n,* 295 F.Supp.2d 643, 646 (S.D.W.Va.2003).

Boone argues that the parole consequences of his 1994 conviction should have been determined in 1995, when the parole violation warrant first was lodged as a detainer. If so, and if Boone is correct that the federal portion of his First Sentence was no longer in effect at the time that his Second Sentence began, the Commission arguably should have made its parole determination using the former D.C. Board's guidelines. However, even if those assumptions were shown to be correct, the Commission's decision to revoke Boone's parole as a consequence of the 1994 conviction still would only be subject to review under an abuse of discretion standard. *See Parnell v. Gunnell,* No. 84 Civ. 254, 1984 WL 3229, at *2–*3 (D.Conn. Aug. 9, 1984) (applying abuse of discretion standard to claim that Commission incorrectly applied D.C. Board standards to D.C.Code violators in federal custody). Accordingly, to prevail Boone must show that there was *no* rational basis for the Commission's decision. *Id.; Iuteri,* 732 F.2d at 37.

### C. *Alleged Statutory Violations*

■ As previously noted, Boone does not dispute that the Bureau of Prisons had the right to aggregate the sentences arising out of his U.S. and D.C.Code convictions. Instead, he contends that he had served the federal portion of that aggregate sentence by the time he was granted parole in 1991, and thus must have been "paroled to his D.C.Code sentence under D.C. parole guidelines." (Pet. at 6). Continuing in this vein, Boone claims that the Commission therefore improperly applied federal parole procedures, rather than those of the D.C. Board, in lodging its

---

**7.** The Tenth Circuit permits the citation of its unpublished decisions when they will assist a

court in the determination of a case. *See* 10th Cir. R. 36.3.

detainer and seeking to revoke his parole. (Pet. at 4).

Boone further alleges that, if the Commission had properly applied the D.C. Board procedures, a parole revocation hearing would have been conducted while he was serving his Second Sentence. (*Id.* at 8). In his view, he therefore would have served any sentence imposed for the parole violation concurrently with his Second Sentence, and his "violator term would have expired before [his Second Sentence] was completed." (*Id.*). Boone states that he consequently would have been eligible for placement in a halfway house or release with home monitoring. (*Id.*). Boone argues that the Commission's application of the "harsher" federal parole guidelines was "arbitrary and capricious," an "abuse of discretion," and a violation of his due process and equal protection rights under the Fifth and Fourteenth Amendments. (*Id.* at 4, 8, 11–12).

### 1. *Expiration of Federal Sentence*

In advancing his claims, Boone assumes that he must have been paroled in 1991 under D.C. Board standards because the federal portion of his aggregate sentence had expired. He argues that any revocation of his parole should therefore also have been governed by the D.C.Code.

In advancing this contention, Boone mistakenly assumes that the procedures pursuant to which a parole *eligibility* date is determined for an inmate serving an aggregate sentence necessarily apply to other Commission decisions, such as the actual granting or revocation of parole. To understand the error in his reasoning, it is necessary to review in further detail the interplay between his U.S.Code and D.C.Code convictions.

The D.C.Code provides that the Attorney General of the United States may assign a defendant sentenced to prison for a violation of the D.C.Code to either a federal facility or one maintained by the District of Columbia. *See* D.C.Code Ann. § 24–201.26 (2001) (formerly codified as § 24–425 (1981)); *Cosgrove v. Smith*, 697 F.2d 1125, 1126 (D.C.Cir.1983). Moreover, if a prisoner assigned to a federal facility is serving sentences for both U.S. and D.C.Code offenses, the Bureau of Prisons is required to aggregate his various terms of imprisonment into a single sentence for administrative purposes. 18 U.S.C. § 3584(c).

The D.C. Board no longer exists. *See* D.C.Code. Ann. § 24–131(b); *Simmons*, 295 F.Supp.2d at 602. Even before the Board's abolition, however, once a D.C. code violator was moved to a federal facility, his eligibility for parole was determined by the Commission, not the D.C. Board. *Walker v. Luther*, 830 F.2d 1208, 1208–09 (2d Cir.1987); *Beard v. Bennett*, 114 F.2d 578 (D.C.Cir.1940). To ensure that a D.C.Code violator in a federal facility was treated the same as his counterpart in a D.C. facility, the Commission was required to apply the parole criteria of the D.C. Board rather than its own guidelines, in deciding the inmate's eligibility for parole. *Walker*, 830 F.2d at 1214–15; *Johnson v. Williford*, 821 F.2d 1279, 1284 (7th Cir. 1987).

When a D.C. code violator also was convicted of a federal offense and was serving an aggregate sentence in a federal facility, the Commission was required to consider the parole eligibility criteria applicable to the separate sentences comprising the aggregate sentence in the course of determining a suitable parole eligibility date. Because different parole eligibility dates could result depending on the order in which the U.S. and D.C.Code convictions occurred, courts required the Commission to apply a uniform set of procedures,

which the Seventh Circuit has described as follows:

First, the Commission applies the federal parole guidelines, 28 C.F.R. § 2.20, to determine a parole suitability date for the federal portion of the sentence; the time between the initiation of custody and this date is called the prisoner's 'federal time.' The guidelines actually yield a range ... from which the Commission may depart upward or downward.... Second, the Commission calculates the combined minimum term of the D.C. offenses ... and then determines under § 2.66(f) how much of that term should run concurrently (or consecutively) with the 'federal time.' Third, after the prisoner serves the federal time and the non-concurrent (or consecutive) portion of the D.C. minimum term, the Commission holds a hearing to apply the D.C. parole suitability guidelines to the D.C. portion of the aggregate term.

*Thomas v. Brennan*, 961 F.2d 612, 616 (7th Cir.1992); *see also Chatman–Bey v. Meese*, 797 F.2d 987, 994 (D.C.Cir.1986) (mixed offenders serving aggregate sentences must serve time at least equal to the minimum D.C.Code term or terms before they may be considered for parole), *vacated on other grounds*, 864 F.2d 804 (D.C.Cir.1988).

Boone's federal sentence was ten years. Because the federal parole regulations applicable to prisoners serving aggregate U.S. and D.C.Code sentences provide that the "federal time" portion of a sentence of five years or more shall not exceed two-thirds of the U.S.Code sentence, *see* 28 C.F.R. § 2.65(d), Boone argues that the federal portion of his sentence had expired by the time he was released on parole in 1991. While Boone is correct that he had completed his "federal time" for purposes of calculating his *eligibility* for parole, this

is not the same as the completion of his federal sentence. Indeed, the Code of Federal Regulations makes clear that a sentence which has been aggregated by the Bureau of Prisons must be "treated as a single aggregate sentence for the purpose of *every* action taken by the Commission pursuant to these rules." 28 C.F.R. § 2.5 (emphasis added). Thus, when a prisoner is serving "*any* combination of U.S. and D.C.Code sentences that have been aggregated by the U.S. Bureau of Prisons ... *every* decision made by the Commission, including the grant, denial, and revocation of parole, is made on the basis of the aggregate sentence." 28 C.F.R. § 2.65(a) (emphasis added); *see also* 28 C.F.R. § 2.65(h) ("Violations of parole are violations on the aggregate sentence, and a parole violation warrant is therefore issued under the authority of the aggregate sentence."); *Howard v. United States Parole Comm'n*, No. 88 Civ. 1769, 1988 WL 98140 (D.D.C. Aug.31, 1988) (rejecting petitioner's argument that the federal portion of his aggregate sentence had expired and that his parole status should thus be governed by the District of Columbia Board of Parole; also noting that, "[o]nce aggregated, the two sentences cannot then be divided. Petitioner cannot claim that the first sentence is served first and then expires as the second one begins. They are but a single sentence.").

There consequently is no legal or factual basis for Boone's contention that he was paroled in 1991 solely on his D.C.Code offenses and that his parole revocation consequently was subject only to the standards of the D.C. Board. Indeed, the cases cited by Boone in an effort to establish the contrary all involved violators convicted only of D.C.Code offenses and therefore are inapplicable. *See, e.g., Walker v. Luther*, 830 F.2d 1208, 1209 (2d Cir. 1987); *Cosgrove v. Smith*, 697 F.2d 1125, 1126–27 (D.C.Cir.1983); *Cosgrove v.*

*Thornburgh,* 703 F.Supp. 995, 997 (D.D.C. 1988); *Thomas v. U.S. Parole Comm'n,* 672 F.Supp. 256, 256 (E.D.Va.1987).

█ Boone's petition may be liberally construed as also arguing that the Commission erred by applying federal standards regarding his right to a preliminary interview, rather than those of the former D.C. Board. Under the D.C. procedures that Boone maintains should have been applied, "[a]n alleged parole violator retaken under a warrant issued by the Board or a member thereof has the right to have a preliminary interview conducted by the Board ... without unnecessary delay." D.C. Mun. Regs. tit. 28, § 219.1 (1987) (quoted in *Nixon v. Quick,* 781 A.2d 754, 760 n. 6 (D.C.2001)). By comparison, the relevant provision of the Code of Federal Regulations states that when a parole violation is predicated upon the parolee's conviction of a federal, state, or local offense, "no preliminary interview shall be conducted unless otherwise ordered by the Regional Commissioner." 28 C.F.R. § 2.48(f). In addition, under the Code of Federal Regulations the Commission may lodge a parole violation warrant as a detainer until the parolee has completed his new sentence without executing the warrant or holding a dispositional hearing. 28 C.F.R. § 2.47(b)(1).

According to Boone, if the applicable D.C. procedures had been followed, he would have received a preliminary interview while he was serving his Second Sentence, and would have been able to serve any time imposed in connection with his parole violation concurrently with the Second Sentence. Boone argues that the application of the Commission's procedures, rather than those of the former D.C. Board, prevented him from serving any additional time imposed as a result of his parole violation concurrently with his Second Sentence.

The applicable statutes and regulations establish that there is no basis for Boone's claim that the Commission should have applied the D.C. Board's procedures in deciding whether to revoke his parole. In his petition, Boone cites Section 219.1 of Title 28 of the D.C. Municipal Regulations. That provision states that a parolee is entitled to have a preliminary interview conducted "without unnecessary delay." The purpose of that interview, however, is simply to inform the alleged parole violator of the charges and his rights, the timing of the revocation hearing, and that if he admits the charges and waives the right to counsel, the person conducting the preliminary interview will conduct the revocation hearing at that time and place. D.C. Mun. Regs. tit. 28, § 219.1 (1987).

What Boone overlooks is the fact that, pursuant to the NCRSIA, the statute requiring the D.C. Board to proceed in this manner has been repealed. *See Simmons v. Shearin,* 295 F.Supp.2d at 602 ("Pursuant to the ... [NCRSIA] ..., sole authority over all parole release decisions regarding District of Columbia Code felony offenders convicted in Superior Court lies with the U.S. Parole Commission."). Moreover, the Commission has been authorized to amend and supplement the D.C. Board's rules. *Id.* (citing *Muhammad v. Mendez,* 200 F.Supp.2d 466, 470 (M.D.Pa.2002)). The Commission did so in 1998. *See Muhammad,* 200 F.Supp.2d at 474. As a consequence, the Commission is required to adhere to the guidelines of the former D.C. Board only for prisoners whose initial hearings were held before August 5, 1998. 28 C.F.R. § 2.80(a)(4). Here, Boone's parole violation warrant was not executed until November 26, 2003, and the Commission first found probable cause to proceed on December 9, 2003. Given this time line, Boone was not entitled to have the Commission apply D.C.

Board procedures or guidelines to his first alleged parole violation.

■ Even if the Commission erred by applying its own procedures in connection with Boone's parole revocation proceedings, the viability of Boone's claim still would rest on at least three assumptions. Specifically, Boone alleges that if the Commission had applied the D.C. Board guidelines: (i) he would have "admitted to the charges and waived his right to be represented by counsel;" (ii) "the person conducting the preliminary interview would have conducted the revocation hearing at that time and place;" and (iii) "the petitioner's D.C.Code violation would have ... run[ ] with his new sentence and petitioner's violator term would have expired before [his] new sentence was completed." (Pet. at 8). Boone has not shown, however, that, if he admitted the charges and waived counsel during a preliminary interview, the outcome of the ensuing revocation hearing would have been a parole violation sentence that he could have served concurrently with his Second Sentence.

For these reasons, Boone has not shown, as he must, that the Commission's decision to revoke his 1991 parole violated the applicable statutes and regulations, or that it lacked any rational basis.

### D. *Constitutional Violations*

Boone also has not established the constitutional injury necessary for him to be granted habeas relief pursuant to Section 2241.

#### 1. *Due Process*

■ Boone's due process claim appears to be that the Commission failed to grant him a prompt preliminary interview so that he could admit his culpability and begin serving his parole violation sentence. However, the Constitution does not create a liberty interest in parole. *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); *Ellis v. Dist. of Columbia,* 84 F.3d 1413, 1415 (D.C.Cir.1996). Thus, any such liberty interest must be supplied by state—or, in this case, District of Columbia—law. *Id.* The former D.C. Board's parole guidelines, however, did not create such a liberty interest in parole. *See Ellis,* 84 F.3d at 1420; *Simmons,* 295 F.Supp.2d at 602.

■ Notwithstanding the lack of a liberty interest, the Supreme Court has held that the termination of parole must follow "some orderly process, however informal." *Morrissey v. Brewer,* 408 U.S. 471, 482, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). In *Morrissey,* the Court explained that this requires "that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available." *Id.* at 485. Subsequently, however, in *Moody v. Daggett,* 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976), the Supreme Court considered whether its holding in *Morrissey* applied when a parole violation warrant was lodged as a detainer at an institution where the petitioner was serving time for a subsequent conviction, but was not executed by service upon him. The Court concluded that the petitioner's incarceration was based on his subsequent convictions, not the parole violation warrant, and that the liberty interests which he sought to protect would not arise until he was "taken into custody under the [parole violation] warrant." *Id.* at 87, 97 S.Ct. 274.

Thus, even if the Commission improperly applied Commission, rather than D.C. Board parole revocation procedures, Boone did not have a due process right to a

hearing until he was taken into custody as a parole violator. *Moody,* 429 U.S. at 89, 97 S.Ct. 274; *see also Carchman v. Nash,* 473 U.S. 716, 731 n. 10, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985) ("This Court has never held ... that a prisoner subject to a probation-violation detainer has a constitutional right to a speedy probation-revocation hearing."). When Boone filed his habeas petition, the Commission had lodged its warrant as a detainer, but it had yet to be executed. There consequently was no requirement at the time that the Commission hold a revocation hearing.

Moreover, after the parole violation warrant was executed on November 26, 2003, the revocation hearing was held on January 21, 2004, (Pantoja Ltr. at 2; Exs. A, E), in conformity with the Commission's published rules, which state that the Commission must hold a parole revocation hearing within ninety days of the execution of a parole violation warrant. 28 C.F.R. 2.49(f). Accordingly, the modest delay between Boone's arrest on the parole violation warrant and his subsequent revocation hearing is insufficient to give rise to a due process claim. *See Chapdelaine v. U.S. Parole Comm'n,* No. 01 Civ. 7364(FM), 2002 WL 31115545, at *8 (S.D.N.Y. Sept.24, 2002) (no due process violation where the Commission held a parole revocation hearing 92 days after the parole violation warrant was executed).

■ Finally, Boone's argument that the lodging of the detainer and subsequent revocation hearing unlawfully deprived him of the ability to qualify for prison release programs is unavailing. In *Moody,* the Supreme Court noted that it previously had "rejected the notion that every state action carrying adverse consequences for prison inmates automatically activates a due process right." 429 U.S. at 88 n. 9, 97 S.Ct. 274. The Court therefore held that a prisoner's mere ineligibility for

rehabilitative programs was insufficient to state a due process claim. *Id.; see also Chapdelaine,* 2002 WL 31115545 at *7 (no due process violation where petitioner claimed that the Commission's delay in conducting its dispositional review "made him ineligible to participate in a community placement program").

Similarly, here, Boone had no due process right to participate in the programs that he contends were withheld while the parole violation warrant was lodged as a detainer, but not yet executed.

## 2. *Equal Protection*

■ Boone's reliance on the Equal Protection Clause is also unavailing. Although this argument is not really spelled out in his petition, Boone's contention appears to be that the Commission treated Boone differently than other D.C.Code offenders by applying federal, rather than D.C. Board, guidelines, in the course of revoking his parole.

■ The Equal Protection clause is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). For Boone's equal protection argument to be successful, he therefore must show that he and the D.C.Code violators whose parole revocation proceedings were conducted pursuant to the D.C.Code were similarly situated. Boone cannot do this because, unlike the D.C.Code violators, Boone was a mixed offender—convicted of both U.S. and D.C.Code violations—who was serving an aggregate sentence.

Boone could conceivably also advance an equal protection claim on the theory that "he is a member of a protected class, or that the [Commission] guidelines involve ... intentional discrimination based upon

race, alienage, national origin, gender, or illegitimacy." *Brown v. U.S. Parole Comm'n,* No. 99 Civ. 2856(BSJ)(FM), 2000 WL 1129580, at *5 (S.D.N.Y. Aug. 8, 2000). In his petition, however, Boone does not allege that he is a member of a protected class or that the Commission's guidelines involve any intentional discrimination. Accordingly, Boone cannot prevail on this potential equal protection claim.

## IV. *Conclusion*

For the foregoing reasons, Boone's petition is meritless and should be denied.

## V. *Notice of Procedure for Filing of Objections to this Report and Recommendation*

The parties are hereby directed that if they have any objections to this Report and Recommendation, they must, within ten (10) days from today, make them in writing, file them with the Clerk of the Court, and send copies to the chambers of the Honorable Richard M. Berman, United States District Judge, at the United States Courthouse, 40 Centre Street, New York, N.Y. 10007, to the chambers of the undersigned, at the United States Courthouse, 500 Pearl Street, New York, N.Y. 10007, and to any opposing parties. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Berman. Any failure to file timely objections will result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72(b).